**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES H.,[1] | : | Case No. 2:25-cv-01007 |
| Plaintiff, | : | |
| | : | District Judge Michael H. Watson |
| vs. | : | Magistrate Judge Caroline H. Gentry |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATION[2]

Plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income are before this Court for the second time. Plaintiff appeals Defendant's finding that he was not under a "disability" as defined in the Social Security Act. Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, the undersigned Magistrate Judge **RECOMMENDS** that the District Judge **REVERSE** the Commissioner's decision and **REMAND** for further proceedings.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] *See* 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendation within the specified time period.

## I. BACKGROUND

Plaintiff asserts that he has been under a disability since April 30, 2020. At that time, he was forty-nine years old and was considered a "younger person" under the Social Security regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c).[3] He subsequently changed age categories to a person "closely approaching advanced age." 20 C.F.R. § 404.1563(d). Plaintiff has a "limited education." 20 C.F.R. § 404.1564(b)(3).

The evidence in the Administrative Record ("AR," Doc. No. 7) is summarized in the ALJ's decision ("Decision," Doc. No. 7 at PageID 790-813), Plaintiff's Statement of Errors ("SE," Doc. No. 12), and the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 15). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

---

[3] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the

ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III. FACTS

### A. The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

Step 1: Plaintiff has not engaged in substantial gainful activity since April 30, 2020, the alleged onset date.

Step 2: He has the severe impairments of thoracic and lumbar degenerative disc disease, rheumatoid arthritis, diabetes, and obesity.

He has the non-severe impairments of obstructive sleep apnea, dysphagia, hiatal hernia, stricture esophagus, gastroesophageal reflux disease, hypothyroidism, hyperlipidemia, and hypertension.

Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: His residual functional capacity (RFC), or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations: "[Plaintiff] can frequently climb ramps and stairs; can occasionally climb ladders, ropes, or scaffolds; can occasionally stoop, kneel, crouch, and crawl; can frequently handle and finger; and must avoid workplace hazards such as unprotected heights and machinery."

He is unable to perform any of his past relevant work.

Step 5: Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform.

(Decision, Doc. No. 7 at PageID 796-807.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability. (*Id.* at PageID 807.)

**B. Obstructive Sleep Apnea**

**1. Disability reports and hearing testimony**

Plaintiff alleged that he is disabled by several physical impairments, including sleep apnea. (AR, Doc. No. 7 at PageID 235, 244.) Plaintiff testified during the January 2023 hearing that he did not sleep well and was "always tired" because of his severe sleep apnea. (*Id.* at PageID 90-91.) Plaintiff further testified that he usually slept for only three to four hours each night and needed to take at least one nap per day. (*Id.* at PageID 96.) Plaintiff testified during the March 2025 hearing that he continued to experience difficulty sleeping and took daily naps. (*Id.* at PageID 829-30.) Plaintiff stated during both hearings that he did not have a CPAP machine due to production issues associated

with the COVID-19 pandemic, as well as insurance issues and a lack of communication with the company and his medical providers. (*Id.* at PageID 90-91, 829-30.)

**2. Medical records**

Plaintiff presented to Nina Hourmouzis, M.D. to establish primary care treatment in August 2021. (AR, Doc. No. 7 at PageID 275.) Significantly, Dr. Hourmouzis noted that Plaintiff did not have medical insurance. (*Id.* at PageID 277.) Plaintiff complained of several physical issues, including snoring, apneic spells, and daytime somnolence. (*Id.* at PageID 277.) Upon a referral from Dr. Hourmouzis, Plaintiff underwent a sleep study in November 2021. (*Id.* at PageID 488-99.) The procedure showed severe obstructive sleep apnea. (*Id.* at PageID 500.)

Plaintiff began seeing pulmonologist Emilia Anigbo, M.D. in February 2022. (AR, Doc. No. 7 at PageID 502.) Plaintiff reported difficulty with falling and staying asleep, apnea and loud snoring, and feeling like he was "never rested upon waking up." (*Id.*) Plaintiff also complained of fatigue and said he took "daily naps lasting up to [two to three hours]." (*Id.*) Dr. Anigbo ordered a CPAP titration study. (*Id.* at PageID 507.) However during the March 2022 titration study, Plaintiff was unable to fall asleep and did not tolerate the CPAP machine. (*Id.* at PageID 520, 527.) Moreover, the study ended early because Plaintiff began complaining of chest pain and needed to be transported to the emergency room. (*Id.* at 520, 527, 530.) During a follow-up pulmonology visit later that month, Dr. Anigbo ordered an APAP machine with humidification. (*Id.* at PageID 533.) She advised Plaintiff to establish with a durable medical equipment company "for provision of equipment, general CPAP education, mask selection/fitting, etc." (*Id.*)

During a primary care visit in August 2023, Plaintiff's provider noted: "[Plaintiff] had sleep studies done almost a year ago and [is] talking to Lincare to get his machine and supplies. [Plaintiff] advised to call [the] Lincare company again and follow-up on equipment." (AR, Doc. No. 7 at PageID 1285.)

Plaintiff consulted with a new primary care physician in December 2023. (*Id.* at PageID 1264.) Laura Roache, D.O. noted that Plaintiff did not have a CPAP machine and "need[ed] an order for this." (*Id.* at PageID 1265.) Dr. Roache advised Plaintiff to ask his pulmonologist about the machine. (AR, Doc. No. 7 at PageID 1270.)

**3. The ALJ's decision**

At Step Two, the ALJ concluded that obstructive sleep apnea was not a "severe" impairment as defined in 20 C.F.R. § 404.1520(c). (Decision, Doc. No. 7 at PageID 796.) The ALJ did not specifically address sleep apnea but instead analyzed all of Plaintiff's nonsevere impairments together, as follows:

> The evidence does not establish other severe impairments. The evidence does, however, establish that [Plaintiff's] medically determinable impairments of obstructive sleep apnea, dysphagia, hiatal hernia, stricture esophagus, gastroesophageal reflux disease, hypothyroidism, hyperlipidemia, and hypertension do not cause more than minimal limitations in [Plaintiff's] ability to perform basic work activities and are, therefore, nonsevere. These conditions appear to be non-durational, controlled with conservative treatment such as medication, and/or do not result in any further complaints or symptoms that have any effect on [Plaintiff's] ability to perform basic work activities (Exhibits 2F, pages 3-5; 3F, pages 3-5; 5F; 7F; 9F; 11F; 12F; 13F; 14F; 15F; 16F; 17F; 18F; 19F).

(*Id.* at PageID 796.) The ALJ also noted that he "considered all of [Plaintiff's] medically determinable impairments, including those that are not severe, when assessing [Plaintiff's] residual functional capacity." (*Id.*)

In the RFC analysis, the ALJ described the applicable legal standard for evaluating Plaintiff's subjective complaints. (Decision, Doc. No. 7 at PageID 798.) The ALJ noted that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," pursuant to 20 C.F.R. § 404.1529 and Social Security Ruling (SSR) 16-3p. (*Id.*) The ALJ summarized Plaintiff's subjective complaints and testimony that he had "difficulty sleeping due to pain and untreated obstructive sleep apnea, and takes daytime naps daily." (*Id.* at PageID 799) The ALJ concluded that although Plaintiff's impairments could reasonably be expected to cause some of his symptoms, the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id*. at PageID 803)

The ALJ then explained why he included certain limitations in the RFC but did not discuss Plaintiff's sleep apnea:

> Regarding [Plaintiff's] physical impairments, the record reflects a history of degenerative disc disease of the thoracic and lumbar spine and rheumatoid arthritis, as well as diabetes mellitus in the context of an obese body habitus. As reflected above, with respect to diabetes, [Plaintiff] was inconsistent with prescribed medication regimens and monitoring orders, however experienced improved control with treatment compliance. While [Plaintiff] regularly complained of musculoskeletal pain and sciatic radiculopathy, as well as joint symptoms associated with rheumatoid arthritis physical examination findings during the period at issue were generally unremarkable, although instances of period acute exacerbation in musculoskeletal symptoms were identified after periods of exertion or accidents as reflected above. The record reflects [Plaintiff] continued to maintain the ability to independently perform activities of daily living, seek out treatment as needed, drive, with no need for any assistive devices for ambulation, or emergency or in-patient treatment for any alleged conditions. The undersigned also notes that at no time was [Plaintiff] counseled or advised to undergo any invasive surgical interventions for his

> alleged impairments. Therefore, the undersigned having considered [Plaintiff's] subjective reports evaluated against the treatment evidence of record, finds [Plaintiff] able to perform light work with [Plaintiff] able to frequently climb ramps and stairs; can occasionally climb ladders, ropes, or scaffolds; able to occasionally stoop, kneel, crouch, and crawl; able to frequently handle and finger; and must avoid workplace hazards such as unprotected heights and machinery.

(*Id.* at PageID 803.)

## IV. LAW AND ANALYSIS

### A. Plaintiff's Assignments of Error

Plaintiff asserts two errors: (1) the ALJ erred in his analysis of Plaintiff's obstructive sleep apnea, and (2) the ALJ's decision is not based on substantial evidence, "particularly as it relates to the ALJ's review of the physical therapy records." (SE, Doc. No. 9 at PageID 3086, 3090.) As discussed below, the undersigned concludes that Plaintiff's second asserted error is not well-taken but also concludes that his first asserted error is well-taken. Therefore, the undersigned recommends that the District Judge reverse and remand the ALJ's decision.

### B. The ALJ Reversibly Erred In His Analysis Of Plaintiff's Obstructive Sleep Apnea.

#### 1. Applicable legal framework

An ALJ evaluates the severity of a claimant's impairments at Step Two of the sequential evaluation. 20 C.F.R. § 404.1520(a)(4)(ii). Plaintiff bears the burden of establishing that he has a severe impairment that meets the twelve-month duration requirement. *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012); 20 C.F.R. §§ 404.1509 & 404.1520(a)(4)(ii). However, the burden of establishing that an

impairment is severe is a "de minimis hurdle in the disability determination process," *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988), and it is intended only to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985).

An impairment is considered severe if it "significantly limits [an individual's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The Social Security Administration has clarified that an impairment will not be considered severe if the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work ...." Social Security Ruling (SSR) 85-28, 1985 WL 56856, at *3 (S.S.A. January 1, 1985).[4] *Accord Higgs*, 880 F.2d at 862 ("[A]n impairment can be considered not severe only if it is ***a slight abnormality that minimally affects work ability*** regardless of age, education, and experience.") (emphasis added).

**2. The ALJ failed to build a logical bridge between the evidence and his conclusion that Plaintiff's obstructive sleep apnea is nonsevere.**

Plaintiff argues that the ALJ erred by finding that his obstructive sleep apnea is nonsevere. (SE, Doc. No. 12 at PageID 3087.) Plaintiff further argues that the ALJ erred by failing to articulate how he accounted for this impairment in the RFC. (*Id.*) Citing the ALJ's duty to "build a logical bridge between the evidence and the ALJ's conclusions," Plaintiff contends that "[t]he ALJ's formulated RFC is not based on substantial evidence

[4] Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

as it is inconsistent with the record including exam findings and the Plaintiff's testimony …." (*Id.* at PageID 3089-90 (citing *Davis v. Comm'r of Soc. Sec.*, No. 2:19-CV-265, 2019 WL 5853389, at *5 (S.D. Ohio Nov. 8, 2019), *report and recommendation adopted*, No. 2:19-cv-265, 2020 WL 1482318 (S.D. Ohio Mar. 27, 2020)).) For the reasons discussed below, the undersigned agrees that the ALJ erred because he did not build a logical bridge between the evidence related to Plaintiff's sleep apnea and the RFC.

Notably, the ALJ did not discuss or analyze any of the medical or other evidence when he concluded that Plaintiff's sleep apnea is nonsevere. (Decision, Doc. No. 7 at PageID 796.) Instead, the ALJ vaguely stated that Plaintiff's sleep apnea is nonsevere because it is "non-durational, controlled with conservative treatment such as medication, and/or [does] not result in any further complaints or symptoms that have any effect on [Plaintiff's] ability to perform basic work activities." (*Id.*) The ALJ supported this vague conclusion with a string citation to numerous medical records that cumulatively document treatment for all of the nonsevere impairments that he identified. (*Id.*)

The Court acknowledges that an ALJ's decision "need not be so comprehensive as to account with meticulous specificity for each finding and limitation, nor is the ALJ required to discuss every piece of evidence in the record." *Correa v. Comm'r of Soc. Sec.*, No. 1:23-cv-685, 2023 U.S. Dist. LEXIS 231766, at *31 (N.D. Ohio Dec. 14, 2023); *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004)). Nevertheless, the ALJ's "factual findings as a whole" must show that he "implicitly resolved the conflicts in the evidence." *Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 n.11 (6th Cir. 2014). The ALJ must also "provide sufficient explanation for the claimant and any reviewing

court to 'trace the path of his reasoning'" and explain "with specificity" how the evidence supports the RFC limitations. *Correa*, 2023 U.S. Dist. LEXIS 231766, at *31-32; *Bailey v. Comm'r of Soc. Sec.*, No. 98-3061, 1999 U.S. App. LEXIS 1621, at *12 (6th Cir. Feb. 2, 1999); *Bledsoe v. Comm'r of Soc. Sec.*, No. 1:09-cv-564, 2011 U.S. Dist. LEXIS 11925, at *12 (S.D. Ohio Feb. 8, 2011).

Here, the fact that significant evidence in the record contradicts the ALJ's statement supports the undersigned's conclusion that the ALJ did not build the required logical bridge or implicitly resolve conflicts in the evidence. As noted, Plaintiff testified during the January 2023 and March 2025 hearings that he did not sleep well, experienced daytime tiredness and needed to take at least one nap per day. (AR, Doc. No. 7 at PageID 90-91, 829-30.) Plaintiff also explained that he did not have a CPAP machine due to production issues associated with the COVID-19 pandemic, as well as insurance issues and a lack of communication with the company and his medical providers. (*Id.*)

To some extent, the medical records corroborate Plaintiff's complaints. In August 2021, Plaintiff complained of snoring, apneic spells, and daytime somnolence, and his primary care physician ordered a sleep study. (AR, Doc. No. 7 at PageID 277-78.) The November 2021 polysomnography report showed severe obstructive sleep apnea. (*Id.* at PageID 488-500.) When Plaintiff saw his pulmonologist in February 2022, he again complained of sleep apnea-related symptoms. (*Id.* at PageID 502.) Plaintiff reported difficulty with falling and staying asleep, apnea and loud snoring, and feeling like he was "never rested upon waking up." (*Id.*) Plaintiff also complained of fatigue and said he took "daily naps lasting up to [two to three hours]." (*Id.*)

Pulmonologist Dr. Anigbo ordered a CPAP titration study, but Plaintiff was unable to fall asleep and did not tolerate the CPAP machine during the March 2022 study. (AR, Doc. No. 7 at PageID 520, 527.) In fact, the study ended early because Plaintiff was transported to the emergency room for an evaluation of pleuritic chest pain complaints. (*Id.* at 520, 527, 530.) Dr. Anigbo nevertheless ordered an APAP machine with humidification. (*Id.* at PageID 533.)

Subsequent records document Plaintiff's difficulty with obtaining an APAP machine. Plaintiff's primary care provider noted in August 2023 that Plaintiff was "talking to Lincare to get his machine and supplies" and that she advised Plaintiff to "call [the] Lincare company again and follow-up on equipment." (AR, Doc. No. 7 at PageID 1285.) In December 2023, a different primary care physician noted that Plaintiff needed an order for a CPAP machine and advised Plaintiff to follow up with his pulmonologist. (*Id.* at PageID 1265, 1270.)

This evidence contradicts the ALJ's conclusion that Plaintiff's sleep apnea was either non-durational, controlled with treatment, or did not have any effect on Plaintiff's work-related abilities. (Decision, Doc. No. 7 at PageID 796.) However, the ALJ neither explained how he resolved these conflicts in the evidence nor built a logical bridge between the evidence and his conclusion that Plaintiff's sleep apnea is nonsevere.

Defendant argues that because Plaintiff was noncompliant with medical advice to use a CPAP machine, the ALJ "reasonably found that his sleep apnea was nonsevere and did not cause any functional limitations greater than the parameters of the residual functional capacity." (Mem. In Opp., Doc. No. 15 at PageID 3102-03.) However, the ALJ

did not connect these two propositions.[5] Further, it is possible that the ALJ credited evidence in the record that explains why Plaintiff was not using a CPAP machine. For example, Plaintiff's primary care physician noted in August 2021 that Plaintiff did not have insurance. (AR, Doc. No. 7 at PageID 277.) And Plaintiff testified in January 2023 that he was "waiting" on a CPAP machine. (*Id.* at PageID 90.) He explained:

> I haven't got the call for that yet. … Lincare called, and they said that they were having trouble getting machines then, you know, because of the pandemic and everything that was going on. So they were saying they would get a hold of me, you know, whenever they did get them, you know, more machines in.

(*Id.* at PageID 90-91 (cleaned up).) Plaintiff similarly testified in March 2025 that he had difficulty sleeping due to sleep apnea and still did not have a CPAP machine. (AR, Doc. No. 7 at PageID 829.) Plaintiff explained:

> During the pandemic when – it was right before the pandemic when they found out I had sleep apnea. They said that they were going to fit me for one. And then they said they were having a hard time getting them in.
>
> And then since I was self-pay because I didn't have insurance, I don't – I just never heard back from them. And then I've went through several doctors because they were having a hard time getting a doctor in there from, you know, from the one I have now.
>
> So yeah. The last doctor said they were gonna check into it. Find out why they never got a hold of me for the CPAP. So yeah, I've never heard anything [since] then.

---

[5] The undersigned notes that the Sixth Circuit has "disparage[d] the Commissioner's use of *post hoc* rationalizations in support of an ALJ's decision." *Miller v. Berryhill*, No. 3:16-CV-00094, 2017 WL 1021313, at *8 (S.D. Ohio Mar. 16, 2017) (citing *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014); *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009)).

(*Id.* at PageID 829-30.) The ALJ did not discuss any of this evidence—either to accept or reject it—when he concluded that Plaintiff's sleep apnea is nonsevere.

Moreover, even if the ALJ did base his conclusion that Plaintiff's sleep apnea was nonsevere upon the fact that Plaintiff did not use a CPAP machine, the ALJ still failed to comply with the requirement to consider ***why*** Plaintiff did not follow this medical advice:

> …. [I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. … We will review the case record to determine whether there are explanations for inconsistencies in the individual's statements about symptoms and their effects …. We will explain how we considered the individual's reasons in our evaluation of the individual's symptoms.

SSR 16-3p, 2017 WL 5180304, *9-10 (revised and republished Oct. 25, 2017). Under this Social Security Ruling, ALJs must consider possible reasons why a claimant failed to seek medical treatment consistent with the degree of his complaints "before drawing an adverse inference from the claimant's lack of medical treatment." *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016).

That did not happen here. Instead, the ALJ simply concluded that Plaintiff's sleep apnea was nonsevere. "It is true that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen*, 800 F.2d at 545; *see also White*, 572 F.3d at 282. But an ALJ's failure to build a logical bridge between the cited evidence and his conclusions

prevents the Court from engaging in meaningful judicial review. *See Blakley*, 581 F.3d at 409 (citing *Wilson v. Comm'r of Soc. Sec,* 378 F.3d 541, 544 (6th Cir. 2004)). Additionally, given that any impairment that is more than a "slight abnormality" should be considered severe, the undersigned finds that the ALJ's conclusions are not supported by substantial evidence.

**3. Because the ALJ's error is not harmless, reversal is warranted.**

Defendant argues that the Court should nevertheless affirm the ALJ's decision because "the ALJ wrote that he considered all of Plaintiff's medically determinable impairments, including those that were not severe (*e.g.*, Plaintiff's obstructive sleep apnea), when assessing the residual functional capacity." (Mem. In Opp., Doc. No. 15 at PageID 3101-02 (citing Decision, Doc. No. 7 at PageID 796 & *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003).) Defendant argues that substantial evidence supports the ALJ's conclusion that Plaintiff could perform other work in light of the combination of all of Plaintiff's severe and nonsevere impairments. (*Id.* at PageID 3102-04.) Defendant also argues that the state agency medical consultants accounted for Plaintiff's sleep apnea in their assessment, and because the ALJ found greater limitations than those assessed by the consultants, "their opinions undermin[e] Plaintiff's claims of disabling limitations." (*Id.* at PageID 3103.) Finally, Defendant argues that "[a] review of the record as a whole also supports a finding that substantial evidence supported the ALJ's conclusion that obstructive sleep apnea was nonsevere and would be adequately accommodated by the limitations articulated in the residual functional capacity." (*Id.* at PageID 3104.) These arguments are not well-taken.

When determining a claimant's RFC, an ALJ must consider the "limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). If an ALJ finds at least one severe impairment, then the failure to find additional severe impairments at Step Two "is of little consequence" when the ALJ "consider[s] all of [a claimant's] impairments in her residual functional capacity assessment finding." *Pompa*, 73 F. App'x at 803. In other words, if the ALJ "finds at least one severe impairment and analyzes all impairments in the following steps, the characterization of other impairments as severe or nonsevere is 'legally irrelevant.'" *Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 817 (6th Cir. 2020) (quoting *Anthony*, 266 F. App'x at 457 (6th Cir. 2008)).

This rule, however, assumes that the ALJ meaningfully considered all nonsevere impairments when assessing the RFC. If the ALJ did not do so, then this rule does not apply. In *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315 (6th Cir. 2015), for example, the Sixth Circuit held that because the RFC determination "did not consider [plaintiff's] mental impairments in a meaningful way," the ALJ's error in categorizing those impairments as nonsevere was not harmless and required reversal. *Id*. at 326.

This holding in *Winn* squarely applies here. Because the ALJ did not mention sleep apnea when he explained why he included certain limitations in the RFC, the undersigned cannot determine whether the ALJ included limitations in the RFC to account for Plaintiff's sleep apnea. More importantly, as discussed above, the ALJ's failure to acknowledge and account for evidence that supported Plaintiff's subjective

complaints about sleep apnea shows that the ALJ "did not consider" sleep apnea "in a meaningful way." *Winn*, 615 F. App'x at 326

The ALJ's partial reliance on the state agency medical consultants' assessments does not cure this error. The consultants did not identify sleep apnea as a medically determinable impairment, much less a severe one. (AR, Doc. No. 7 at PageID 107-08, 117-18.) Indeed, the consultants could not review the polysomnography report because it was added to Plaintiff's electronic file ***after*** the consultants completed their reviews. (*Compare* Exhibit 7F – Office Treatment Records dated November 11, 2021 to March 18, 2022, AR, Doc. No. 7 at PageID 487-535, *with* Exhibit 5A – Disability Determination Explanation at the Reconsideration Level dated February 4, 2022, AR, Doc. No. 7 at PageID 116-21.) And the consultant who reviewed the evidence at the reconsideration level wrote: "A sleep study was ordered, but an official [diagnosis] has not been made nor are work-related limitations described [due to] this." (AR, Doc. No. 7 at PageID 118.)

The ALJ found the consultants' findings to be unpersuasive because they "had only a limited body of evidence to review during their respective consideration periods, with additional evidence submitted during the pendency of the claim during the Administrative Law Judge level of review." (Decision, Doc. No. 7 at PageID 804.) The ALJ then explained why he restricted Plaintiff to the reduced range of light work in the RFC. (*Id.*) Although the ALJ cited Plaintiff's severe impairments, he did not mention Plaintiff's sleep apnea. (*Id.*)

In sum, because the RFC determination did not consider Plaintiff's obstructive sleep apnea "in a meaningful way," the ALJ's error is not harmless. See *Winn*, 615 F.

App'x at 325-26. The undersigned therefore recommends that the District Judge reverse and remand the ALJ's decision.

### C. The ALJ Did Not Reversibly Err In Evaluating Plaintiff's Spine Condition.

Plaintiff also asserts that the ALJ's RFC is unsupported by substantial evidence. (SE, Doc. No. 12 at PageID 3090-91.) Plaintiff challenges this statement by the ALJ: "While [Plaintiff] regularly complained of musculoskeletal pain and sciatic radiculopathy … examination findings during the period at issue were generally unremarkable, although instances of period[s of] acute exacerbation in musculoskeletal symptoms were identified after periods of exertion or accidents … having considered [Plaintiff's] subjective reports evaluated against the treatment evidence of record, finds [Plaintiff] able to perform light work …." (*Id.* at PageID 3090 (citing Decision, Doc. No. 7 at PageID 803).) According to Plaintiff, the ALJ's analysis "is flawed as it fails to consider the objective findings, not merely the Plaintiff's subjective reporting, in the record." (*Id.*) The undersigned concludes that this second assignment of error lacks merit because the ALJ's RFC—at least as it accounts for Plaintiff's spine condition—is supported by substantial evidence.[6]

#### 1. Applicable legal framework

Determination of the RFC is a task reserved for the ALJ. 20 C.F.R. § 404.1546(c); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's

---

[6] Because Plaintiff did not challenge the ALJ's analysis of Plaintiff's other severe impairments (*see* SE, Doc. No. 12 at PageID 3090-91), the undersigned has only addressed the ALJ's evaluation of Plaintiff's spine condition.

testimony to form an 'assessment of his [RFC]'"). A claimant's RFC describes the most she can do in a work setting despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). When formulating the RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4).

The ALJ must base the RFC on all relevant evidence in the record, including the claimant's descriptions of her limitations and symptoms, objective medical evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 404.1545(a)(1)-(5). An ALJ may also rely on the testimony of a vocational expert. 20 C.F.R. §§ 404.1560(b)(2), 404.1566(e). "Substantial evidence may be produced through reliance on the testimony of a VE in response to a 'hypothetical' question, but only 'if the question accurately portrays [Plaintiff's] individual physical and mental impairments.'" *Varley v. Sec'y of Health and Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

**2. With respect to Plaintiff's spine condition, the ALJ's RFC is supported by substantial evidence.**

Plaintiff contends that the ALJ erred by failing to limit Plaintiff to sedentary work due to his spine condition. (SE, Doc. No. 12 at PageID 3091.) Plaintiff argues that if he were limited to sedentary work, then the Medical-Vocational guidelines would direct a finding of disability. (*Id.*) To support his argument, Plaintiff relies on objective findings that were documented in physical therapy records dated between December 2024 and February 2025. (*Id.* (citing AR, Doc. No. 7 at PageID 1311, 1470-72).) Plaintiff also cites

the physical therapist's discharge note that "therapy was no longer indicated due to 'no progress.'" (*Id.* (citing AR, Doc. No. 7 at PageID 1311).)

As noted above, the substantial evidence standard precludes this Court from weighing the evidence and deciding whether the preponderance of the evidence would support a different conclusion. *Biestek*, 139 S. Ct. at 1154. Instead, this Court is limited to determining whether the ALJ's findings are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.

Here, the Court concludes that the ALJ's findings with respect to the RFC and Plaintiff's spine condition are supported by substantial evidence. The ALJ acknowledged many of Plaintiff's subjective complaints related to his spine condition, which included allegations of back and hip pain that radiated to his right leg, difficulty with exertional activities such as bending, lifting, and walking, and difficulty with activities of daily living. (Decision, Doc. No. 7 at PageID 799-803.)

The ALJ also acknowledged that imaging showed degenerative changes throughout the thoracolumbar spine, including moderate central canal stenosis at the L4-5 level and disc bulging at several levels. (Decision, Doc. No. 7 at PageID 800-02.) The ALJ summarized the medical records that documented Plaintiff's treatment for his spine condition. (*Id.* at PageID 800-03.) The ALJ acknowledged that Plaintiff participated in physical therapy in early 2022, mid-2023, and early 2025, and that Plaintiff sought pain management treatment on several occasions. (*Id.*) The ALJ cited physical examinations that showed abnormalities such as an inability to squat, some discomfort with forward leaning, tenderness to palpation in several areas, limited lumbar flexion, positive straight

leg raising on the right, decreased strength in the legs, positive Patrick's and Gaenslen's testing, positive pelvic compression testing, decreased sensation in the heels, and a guarded gait. (*Id.* at PageID 799-803.) The ALJ also acknowledged that Plaintiff's BMI remained above 34, indicating obesity. (*Id.*) The ALJ compared this evidence to other examinations that showed no spinal tenderness, no difficulty moving his extremities, normal range of motion, no motor or sensory deficits, no swelling or weakness, full strength in the extremities, negative straight leg raising, and no difficulty with and/or normal ambulation. (*Id.*) The ALJ also noted that Plaintiff's treatment was "generally limited and wholly conservative." (*Id.* at PageID 799.)

The ALJ concluded that the balance of the objective and other evidence did not support Plaintiff's allegations of symptom severity. (Decision, Doc. No. 7 at PageID 803.) With regard to Plaintiff's complaints of musculoskeletal pain and sciatic radiculopathy, the ALJ explained that "physical examination findings during the period at issue were generally unremarkable, although instances of period [sic] acute exacerbation in musculoskeletal symptoms were identified after periods of exertion or accidents as reflected above." (*Id.*) The ALJ explained that Plaintiff "continued to maintain the ability to independently perform activities of daily living, seek out treatment as needed, drive, with no need for any assistive devices for ambulation, or emergency or in-patient treatment for any alleged conditions." (*Id.*) The ALJ also noted "that at no time was [Plaintiff] counseled or advised to undergo any invasive surgical interventions for his alleged impairments." (*Id.*) The ALJ accounted for this evidence by limiting Plaintiff to the reduced range of light work in the RFC. (*Id.*)

Again, the undersigned emphasizes that the Court cannot re-weigh the evidence and determine whether it would support a different conclusion. Based upon the evidence discussed by the ALJ, the undersigned finds that the ALJ's conclusions regarding Plaintiff's spinal condition are supported by substantial evidence. Accordingly, the ALJ did not err by failing to include additional limitations in the RFC.

Further, the undersigned concludes that the ALJ did not "selectively focu[s] on the Plaintiff's subjective complaints" in the physical therapy records or "mischaracterize the [physical therapy] findings as subjective complaints," as Plaintiff alleges. (*See* SE, Doc. No. 12 at PageID 3090-91.) As explained above, an ALJ's decision "need not be so comprehensive as to account with meticulous specificity for each finding and limitation, nor is the ALJ required to discuss every piece of evidence in the record." *Correa*, 2023 U.S. Dist. LEXIS 231766, at *31. Instead, the ALJ's "factual findings as a whole" must show that he "implicitly resolved the conflicts in the evidence" (*Johnson*, 579 F. App'x at 437 n.11), and the ALJ must "provide sufficient explanation for the claimant and any reviewing court to 'trace the path of his reasoning'" and explain "with specificity" how the evidence supports the RFC limitations. *Correa*, 2023 U.S. Dist. LEXIS 231766, at *31-32. The undersigned finds that the ALJ did so with respect to Plaintiff's spinal condition.

For all of these reasons, Plaintiff's second assignment of error is not well-taken.

## V. REMAND

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for

rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary, particularly as to Plaintiff's severe obstructive sleep apnea, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1. Plaintiff's Statement of Errors (Doc. No. 12) be GRANTED;
2. The Court REVERSE the Commissioner's non-disability determination;
3. No finding be made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4. This matter be REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5. This case be terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

**DEADLINE TO FILE OBJECTIONS**

In accordance with Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may file and serve specific written objections to this Report and Recommendation ("R&R") **within fourteen (14) days** after being served with a copy. A party may respond to another party's objections **within fourteen (14) days** after being served with a copy. If necessary, the objecting party must promptly arrange for transcribing the record, or whatever portions of it to which the parties agree or the Magistrate Judge considers sufficient. If proper objections are timely filed, then the District Judge will conduct a de novo review of the challenged portion(s) of the R&R. Failure to file timely objections may forfeit rights on appeal. *See U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).